No. 21,434.

THE STATE OF KANSAS, ex rel. H. O. CASTER, as Attorney for the Public Utilities Commission et al., *Plaintiff*, v. THE SOUTHWESTERN BELL TELEPHONE COMPANY, *Defendant*.

SYLLABUS BY THE COURT.

1. UTILITIES COMMISSION — *Order May be Enforced by Mandamus.* This court has jurisdiction to enforce by mandamus an order of the utilities commission, notwithstanding the pendency in the district court of an action to enjoin its enforcement.

2. SAME—*Telephone Service Discontinued—Restoration Ordered—Order Not Enforced by Mandamus.* In mandamus to require a public utility to reëstablish a service or practice which it has discontinued without the consent of the utilities commission, no inquiry will ordinarily be made into the question whether such service or practice is one which the utility should be or could be compelled to maintain permanently, that being a question to be passed upon in the first instance by the commission; but where the utility has already, in a proceeding before the commission to which it was made a party, shown to that tribunal the existence of facts that would have compelled the grant-

ing of such consent if it had been asked, obedience to an order of the commission directing the restoration of the service will not be compelled by mandamus, merely because of the failure of the utility to procure such consent in advance.

3. TELEPHONE COMPANY—*Gratuitous Service—Discriminating Practice.* The gratuitous allowance by one telephone company of the use by another company of a line owned by it, constitutes a discriminating practice forbidden by the statute, and therefore is not one which the utilities commission can require to be continued.

4. SAME—*Dismantling Telephone Line—Another Efficient Line Established.* The dismantling of a direct telephone line between two places does not constitute an objectionable change in a practice pertaining to service, where the company owning it has established another line, although not a direct one, between such places, by means of which all business between them is efficiently handled, without detriment to the public or to individuals.

Original proceeding in mandamus.   Opinion filed January 12, 1918.   Writ denied.

*F. S. Jackson,* and *H. O. Caster,* both of Topeka, for the plaintiffs.

*J. W. Gleed, C. J. Evans,* and *D. E. Palmer,* all of Topeka, for the defendant.

The opinion of the court was delivered by

MASON, J.: This is an original proceeding in mandamus, brought by the public utilities commission to compel the Southwestern Bell Telephone Company to obey an order made by the commission requiring it to rebuild a telephone line between Garnett and Lone Elm. It is submitted upon certain stipulations and the evidence taken before the commission prior to the making of the order.

The line (of iron wire) was built in 1900 by a local company which owned an exchange at Garnett. The subscribers to that exchange and to the one at Lone Elm, which lies fourteen miles due south, were allowed the use of it without charge, except as a charge may be deemed to have been included in their regular telephone rental. In 1905 the defendant (or a company of which it is the successor) purchased the Garnett exchange, with the line to Lone Elm. After this purchase the Bell company accepted calls for Garnett from Lone Elm over

this line without making a charge therefor. This practice continued until sometime in 1915, although the Bell company and the Anderson County Telephone Company, which owned the exchange at Lone Elm, had in the meantime entered into a written contract fixing rates for toll calls, which apparently was intended to cover all business of that character, no exceptions being stated, and no specific reference being made to the line from Garnett to Lone Elm. In July or August, 1915, a storm destroyed a part of the line, and while there is some evidence that communication was once established after that, the poles were in such condition that its continued use would have required it to be practically rebuilt. The Bell company thereupon dismantled it.

In October, 1916, the Lone Elm company (known as the Anderson County Telephone Company) complained in writing to the utilities commission of this discontinuance, and asked for a restoration of "free exchange to Garnett and connecting lines." An amended complaint was filed later asking that service be restored over the line referred to "at the rate of ten cents per message, with a twenty-five per cent commission on originating call." A hearing on these complaints resulted, as already indicated, in the making of the order which is now sought to be enforced. The Bell telephone company within due time began an action in the district court, which is still pending, to enjoin the enforcement of the order. The present proceeding has been brought upon the theory that the controversy turns upon a pure question of law, the final decision of which can be reached more quickly and conveniently by this course. The evidence taken before the commission was to the effect that the Bell company maintains toll service between Lone Elm and Garnett by means of a copper wire metallic circuit through Iola, which lies some fifteen miles southeast of Lone Elm; that the service over this line is prompt, efficient, and adequate, the charge being fifteen cents a message; that all the calls between the two points can be readily handled with the present facilities; that the business would not yield a reasonable return on the investment required to rebuild the old line. The order sought to be enforced appears not to be based upon any doubt as to the existence of these facts, but is explicitly rested upon the proposi-

tion that the defendant violated the law in discontinuing its former practice without obtaining the consent of the commission.

1.   A preliminary question is raised by a motion to quash the alternative writ on the ground that action by this court is precluded by the pendency of the injunction action in the district court, which is somewhat in the nature of a statutory appeal from the order of the commission.   The utilities statute provides that an action to vacate an order of the commission may be brought in any court of competent jurisdiction. (Gen. Stat. 1915, § 8348.)   Provision is also made for the enforcement of the order by mandamus (Gen. Stat. 1915, § 8367), but without express reference to the effect of a prior action in another court.   The statute creating the board of railroad commissioners provided that notwithstanding the pendency of an action in the district court  to set aside an order of that body, mandamus to enforce it could be brought in the supreme court, which was authorized to stay further proceedings in the earlier action.   (Gen. Stat. 1915, § 8447.) The public utilities act contains a section reading as follows:

"All laws relating to the powers, duties, authority and jurisdiction of the board of railroad commissioners of this state are hereby adopted, and all powers, duties, authority and jurisdiction by said laws imposed and conferred upon the said board of railroad commissioners, relating to common carriers, are hereby imposed and conferred upon the commission created under the provisions of this act." (Gen. Stat. 1915, § 8328.)

The defendant insists that by its express terms this section merely vests in the utilities commission the powers which the railroad commission had previously possessed *relating to common carriers,* and that it does not have the effect of making the procedure in regard to orders for the regulation of common carriers applicable to those concerning other public utilities.   We think, however, that the first clause of the section, by which all laws relating to the powers of the railroad board are "adopted," must be held to mean that all the provisions of the statute with regard to the action of that body, including those relating to the enforcement of its orders, are made applicable (so far as their nature permits) to the new tribunal—the utilities commission.   Otherwise, where an order of the commission is in litigation, we should have dif-

21—102 Kan.

ferent systems of procedure, depending upon whether a common carrier or some other utility were affected—a situation not in keeping with the obvious spirit of the enactment. Moreover, the view we have taken accords with the policy of the new law in making its remedies cumulative to those already in existence. (Gen. Stat. 1915, § 8368.)

2. The statute enacted in 1911 provides that "no change shall be made in any . . . rule or regulation or practice pertaining to the service or rates of any such public utility . . . without the consent of the commission," etc. (Gen. Stat. 1915, § 8347.) It has been held that in an action brought in this court to require a utility to reëstablish a service which it had discontinued without the consent of the commission, no inquiry will be made into the question whether the service involved is one which the utility should be or could be compelled to maintain permanently, because that is a matter to be passed upon in the first instance by the commission. (The State, ex rel., v. Postal Telegraph Co., 96 Kan. 298, 150 Pac. 544.) In the opinion in the case just cited it was said:

"Let it be granted, as the demurrer does concede, that the maintenance of a telegraph station at Syracuse is unprofitable. All that was necessary for the defendant to do was to make application to the commission, setting up the facts. It would then be the duty of the commission to verify the facts by proper investigation; and if the alleged facts were true and no other lawful interest was materially affected, the commission would be bound to grant the application. If the commission failed to do so, the courts are open and mandamus or other appropriate remedy would speedily redress the telegraph company's situation. But here the telegraph company gave the commission no opportunity to investigate." (p. 306.)

The present situation differs materially from that which was there considered, in this: Here everything bearing upon the question whether the utility should be required to continue the service or practice involved has been brought to the attention of the commission, and has been considered and acted upon by it. True, the telephone company has not in so many words asked for leave to discontinue the practice or service, and it has consistently contended (in obvious good faith and with considerable plausibility) that the case is not one in which such permission is necessary. But the company was made a party to a proceeding formally brought before the

commission, in which the issue was whether it ought to be required to reëstablish the line between Garnett and Lone Elm. In that proceeding it presented the reasons upon which it based its claim of right to dismantle the line, and the law and evidence bearing upon the matter were fully gone into. It in effect asked the commission to decide that it ought not to be required to continue the service—which is not very different essentially from asking that the commission approve its course, although protesting that it had no authority to do otherwise. The commission has had the opportunity to consider every aspect of the case upon its merits. Assuming that it was the duty of the company to have kept the line in operation at any expense until it had obtained leave to discontinue it, yet if the facts established in a hearing before the commission showed clearly that such permission must necessarily have been granted upon request, it would be allowing considerations of mere form to prevail over those of substance to require the company to rebuild the line as a prerequisite to the commission's applying the law to the facts and declaring that it had then the right to remove it. Such a course could result in no practical benefit to the public, and is not necessary to the vindication of the rule that no change in service may be lawfully made without the consent of the commission. In the Postal-Telegraph case the court did not make an unqualified order for the reinstatement of the abandoned service; it directed the issuance of a writ compelling such action only in case the defendant should omit for thirty days to apply to the commission for leave to discontinue the service there involved. Here such a provisional order is unnecessary because all the facts affecting the duty of the defendant in the matter are fully before the court, in the form of evidence that has already been considered by the commission.

3. The defendant maintains that it had a right to abandon the practice of receiving without charge, calls from Lone Elm over this line because that practice, inasmuch as it involved giving free service, was in violation of the statute prohibiting discrimination in rates. (Gen. Stat. 1915, § 8343.) The plaintiff argues that the service was not rendered gratuitously, but was a part of the benefit the individual subscriber received in consideration for the rental he paid, the advantage

to the local exchange consisting in the increased patronage which presumably resulted therefrom. The infirmity of this reasoning lies in the facts of the case. The Lone Elm exchange contributed nothing to the building or maintenance of the line. Its subscribers may be conceived as paying it for the use of the wire, but as none of the money reached the Bell company, the owner of the property received no return. The defendant cannot be considered as receiving a revenue from the subscribers to the Garnett exchange, because according to its statement, which is consistent with the evidence, the practice referred to did not obtain as to them. The service having been furnished without compensation in any form was in violation of the letter and spirit of the statute, and therefore was not one the commission could require to be maintained.

4. So far as the Lone Elm exchange is concerned the controversy is merely over the rate to be charged—the difference between ten and fifteen cents a message. Such a controversy has no real relation to the maintenance of the line in question. The fact that at present the business done by the defendant between Garnett and Lone Elm goes over the wire through Iola does not affect the matter. So long as the service is efficient—and this is not disputed—it makes no difference to the public whether the wire used follows an approximately straight line or not. The situation is much the same as though the defendant had built a new (and improved) line directly from Garnett to Lone Elm, and then destroyed the old one. There is no complaint of its facilities for handling all business between these points. If its present charge is unreasonable any grievance in that regard can be remedied as well without the reëstablishment of the iron circuit as with it—the existence or nonexistence of an additional line does not affect the matter at all. The utilities commission is given a revisory power over any "practice or act whatsoever, relating to any service performed" by a public utility. (Gen. Stat. 1915, § 8343.) And as already stated, the statute forbids the change in any practice pertaining to service or rates without the commission's consent. But the commission has no authority to control the action of a utility with respect to details or methods which do not affect the results produced—

the service actually rendered—unless means are employed which are in themselves objectionable because detrimental to interests that are under the protection of the commission. If a telephone company substitutes a new wire for an old one, or a copper wire for a less serviceable iron one, that is not a change of practice pertaining to the service to which the commission can rightfully object. And the substitution of a longer line of communication for a shorter one is not objectionable unless the efficiency of the service is impaired or some incidental injury results.

These considerations require the refusal of the writ asked. To avoid a possible misunderstanding, it may be added that it does not follow from anything here decided that where by mutual arrangement a connection has been established between two or more local exchanges, by which their subscribers are brought into communication with each other without charge other than such as is included in the payment of rent, such service may be discontinued (or that an additional charge may be exacted for its continuance) without the consent of the utilities commission.

The application for a peremptory writ is denied.