## No. 25,644.

THE STATE OF KANSAS, *ex rel.* THE PUBLIC UTILITIES COMMISSION and CHARLES B. GRIFFITH, Attorney-general, *Plaintiffs,* v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY and THE WESTERN UNION TELEGRAPH COMPANY, *Defendants.*

### SYLLABUS BY THE COURT.

1. TELEGRAPH COMPANY—*Changing Rates Without Permission of Utilities Commission—Statute Valid.* The provision of the statute requiring a public utility to obtain the consent of the public utilities commission before changing any rate, rule, regulation or practice is a valid exercise of legislative power.

2. SAME—*Transfer of Franchise—Obligations Transferred to Transferee.* In the transfer of the franchise, easements and property of a utility from one corporation to another, the transferee takes them subject to obligations to the public which inhere in the franchise granted.

3. SAME—*What Telegraph Messages Constitute Interstate Commerce.* The transmission of telegraphic messages which pass from one state to another, or which in passing between two points within a state pass a part of the way through another state, is interstate commerce, and such business is free from state control.

4. SAME—*Mandamus Proceedings—Nature of Judgment to be Rendered Under*

*Facts Proven.* A railway and telegraph company which had been furnishing telegraphic service to the public at a station discontinued the service without the consent of the public utilities commission. Application was promptly made to the commission to restore the service and upon a full hearing before the commission on the merits of the application an order of restoration was made. In a mandamus proceeding to enforce the order it was shown that the intrastate business at the station did not warrant the furnishing of telegraphic service there, and that if an application to the commission had been made for a suspension of the service it must have been granted: *Held,* that the restoration of the service will not be compelled by mandamus, although the consent of the commission for the discontinuance of the service was not first obtained, but under the circumstances the costs of the proceeding should be adjudged against the defaulting utilities.

Original proceeding in mandamus. Opinion filed February 7, 1925. Writ denied.

*Charles B. Griffith,* attorney-general, *Fred S. Jackson, Henry V. Gott,* both of Topeka, and *Maurice Murphy,* of St. Marys, for the plaintiffs.

*W. W. Brown, Alfred G. Armstrong,* both of Parsons, *Charles Blood Smith,* of Topeka, and *Francis R. Stark,* of New York, N. Y., for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding brought by the public utilities commission to compel the Missouri-Kansas-Texas Railroad Company and the Western Union Telegraph Company to restore the telegraph station and resume the furnishing of telegraphic service at Strawn, Kan.

It appears that such service had been furnished by the defendants at the town for twenty-five years prior to February 2, 1922, under a contractual relationship between them. On the date mentioned the service was discontinued without application to or the permission of the public utilities commission. On March 30, 1922, a complaint was made by certain citizens to the commission, and upon due notice to defendants a hearing was had at Strawn as to the necessity for and the right to the service formerly provided. On the evidence produced the commission reached a decision on July 18, 1922, and entered an order to the effect that the defendants should restore the telegraphic service at Strawn within thirty days from that date, and should thereafter maintain such service as had been maintained prior to February 2, 1922. The defendants did not comply with the restoration order and hence this proceeding was brought to enforce compliance.

Several defenses were set up by the defendants, among which was

that a transfer of ownership and control of the railroad had occurred since the order was made and also that the telegraph business was almost entirely interstate, the regulation of which was beyond the jurisdiction of the commission, and that such intrastate business as had been transacted at the station was infinitesimal, and that a requirement to maintain a commercial telegraph station in that town where there were only about 150 residents and only an intrastate message or two within a year was arbitrary, confiscatory and void. It was also contended that the order constituted an interference with and a direct burden upon interstate commerce. Although the telegraph business at the station was largely interstate, which is unquestionably outside of state control, it appears that a part of it was intrastate. The defendants and their predecessors had undertaken a telegraph business, and had served the public in that way for many years. The public had an interest in the business so conducted and the regulation of state business was well within the power of the commission. The sale and transfer of the railroad to another company did not defeat regulations made nor take the utility out of state control. In acquiring the franchise, easements and property of the company the purchaser took them subject to the obligations and burdens which inhered in the original grant of franchise. (*Public Utilities Co. v. Armour, Sheriff,* 115 Kan. 152, 222 Pac. 748, and cases there cited.) In the conduct of the intrastate telegraph business the defendants were unquestionably within the supervision and control of the commission. The legislature has so declared, and the court has determined that "the power thus granted is a valid exercise of governmental supervision and does not contra-- vene any provision of either the national or state constitution." (*The State, ex rel., v. Kansas Postal-Telegraph Co.,* 96 Kan. 298, 150 Pac. 544.) The legislature has expressly provided that utilities cannot change any rate, rule, regulation or practice without the consent of the commission, and however unprofitable the business may have been at Strawn, the defendants had no right to ignore the provisions of law respecting a change of practice or a discontinuance of service. The defendants are corporations, creatures of the law, and have no powers except such as are granted by law, and therefore have no excuse for flouting the law under which they exist and operate. If the service is burdensome and of a kind which it is unjust to require, there is an easy way to secure relief from the burden. It must be assumed that the commission will sanction the discontinuance of a rule or practice which is confiscatory in effect or which

by a change of conditions has become unnecessary or unwarranted. If such relief is not granted by the commission, an ample remedy may be obtained through an application to the court. In no event may public utilities arrogate the right to determine for themselves the function and powers conferred upon the commission. In *The State, ex rel., v. Postal Telegraph Co.*, supra, the telegraph company closed a telegraph station and discontinued telegraphic service at a town without the consent of the commission, claiming it was entitled to suspend the services on its own hook where the station was operated at a loss. Of this it was said:

"If this public utility, a telegraph company, can close one of its offices and quit business without the consent of the commission, any other public utility, like the Santa Fe railway, for example, could close its depot at Dodge City, Hutchinson or Emporia without the consent of the commission. Where would this end? If these utility corporations may abandon this particular service without the consent of the commission, may they not take off their passenger trains, take up and abandon unprofitable branch lines, change the fares and rates of transportation for passengers and freight or raise the charge for telegraph messages without the consent of the commission? These questions answer themselves." (p. 305.)

While the discontinuance of the telegraph service was unwarranted and illegal, the question remains, What shall the penalty be, and what disposition should we make of the present litigation? The public utilities commission must concede that interstate business is free from state control, and that the commission has no jurisdiction to regulate or control that part of the business. Complaints as to service given in that line of business or application to compel restoration of such service should be presented to the interstate commerce commission, which is vested with exclusive jurisdiction over that character of business. (*Railroad Co. v. Utilities Commission*, 114 Kan. 190, 217 Pac. 322.) It has been shown that the defendant railroad company can be efficiently operated without a telegraph station at the village of Strawn, and that the telegraphic business both state and interstate was small, and very little of that which was done was intrastate. The principal use of the wires was made by two grain dealers, resident in Strawn, but their business appears to have been interstate in character. Some of the messages transmitted were sent from one point to another in the state, but under the system they were transmitted from Strawn through the territory of another state to destinations. Within the law the transmission of a message through two states is interstate commerce. The

fact that the terminals are in the same state does not make the messages intrastate where they pass part of the distance through another state. (*Railroad Co. v. Utilities Commission,* supra; *Western Union Tel. Co. v. Speight,* 254 U. S. 17.) That part of the business which was intrastate may be said to be almost insignificant in amount and the compensation for handling this business far exceeds the expense of maintaining the same. The defendants of course cannot be required to carry on the business at a loss. (*Court of Industrial Relations v. Packing Co.,* 109 Kan. 629, 201 Pac. 418; *Brooks-Scanlon Co. v. R. R. Comm.,* 251 U. S. 396.) Evidence was produced tending to show that messages may be sent from Hartford, which is about six miles away from Strawn, on one side, and about eight miles distant from Burlington on the other side. These messages may be sent by what is called mailgrams and by telephone to these near-by points where there is telegraphic service, and from which they may be transmitted with only the loss of a few minutes' time. Under the circumstances an order compelling the service demanded would be unreasonable and confiscatory. While the service was discontinued without the consent of the commission and in violation of law, the practical question arises, What judgment should be awarded? Ordinarily the question of whether a service demanded is necessary, reasonable and just, or unreasonable and confiscatory, should be first presented to and determined by the commission, but it appears that the subject in hand received prompt attention, and the facts in the case were tried out fully before the commission. A complaint was made the month following the suspension of the service and the commission at once took up the complaint, had a full hearing on its merits and passed on the evidence taken when an order was made: In the present proceeding the facts have been fully developed, the rights of the parties fully considered, and there can be no doubt that the defendants would have been entitled to an order of the commission suspending the service if proper application therefor had been made. It would be futile to send the parties back to retry the case and come back here in a few weeks to be told again that the service could not reasonably be required. Following the practice in *The State, ex rel., v. Telephone Co.,* 102 Kan. 318, 170 Pac. 26, we have concluded that such a duplication of effort would not serve any good purpose. There, as here, a telephone company discontinued a public service without the consent of the commission. The matter was brought to the attention of the

commission, where a full hearing was had and a decision made. When a mandamus proceeding was brought it was held that it having been shown that the consent of the commission must have been granted if it had been asked, the restoration of the service would not be compelled by mandamus. It was said:

"Assuming that it was the duty of the company to have kept the line in operation at any expense until it had obtained leave to discontinue it, yet if the facts established in a hearing before the commission showed clearly that such permission must necessarily have been. granted upon request, it would be allowing considerations of mere form to prevail over those of substance to require the company to rebuild the line as a prerequisite to the commission's applying the law to the facts and declaring that it had then the right to remove it. Such a course could result in no practical benefit to the public, and is not necessary to the vindication of the rule that no change in service may be lawfully made without the consent of the commission." (p. 323.)

Although the writ asked will not be issued, we have concluded that the costs of this proceeding should be paid by the defendants. Their disregard of a specific provision of the law in the discontinuance of the service without obtaining the permission of the commission warrants the court in imposing the costs upon the defendants. The judgment will be that the peremptory writ will not be issued, but the costs of the proceeding will be taxed to defendants.