No. 31,907

THE STATE OF KANSAS, ex rel. CHARLES W. STEIGER, Attorney for the State Corporation Commission, et al., *Plaintiffs*, v. THE CAPITAL GAS & ELECTRIC COMPANY et al., *Defendants*.

(33 P. 2d 731.)

Opinion filed June 9, 1934.

*Charles W. Steiger, Frank P. Eresch, E. H. Hatcher,* all of Topeka, *Charles D. Welch,* of Coffeyville, and *Louis R. Gates,* of Kansas City, for the plaintiffs.

*Robert Stone, H. A. Russell,* both of Topeka, and *Robert D. Garver,* of Kansas City, Mo., for the defendants.

*James W. Finley, S. N. Hawkes* and *R. E. Cullison,* all of Bartlesville, Okla., as *amici curiæ.*

The opinion of the court was delivered by

SMITH, J.: This is an original action in mandamus. An alternative writ issued. The defendants made a return in due time. Plaintiffs demurred to the return. The pleadings thus raise the question of whether a peremptory writ should issue.

The action grows out of a controversy that has been going on in this state between the state regulatory commission and certain pipeline, distributing and holding companies for several years past.

The defendants comprise a group of gas companies known as the Doherty companies. A phase of this proceeding has been dealt with by the supreme court of the United States in the case of *State Corporation Commission v. Wichita Gas Co.,* 290 U. S. 561, 78 L. Ed. 362. In that case the court described the corporate relations of the companies involved. For want of a better description, the one used in that opinion will be given here. It is as follows:

"Ten suits were consolidated for trial. The appellee in each of the first nine is a local public-service corporation, for convenience called a distributing company, engaged in the business of furnishing natural gas to consumers, domestic and industrial, in Kansas, and together they operate in 128 cities and towns. The other appellee, Cities Service Gas Company, is a pipe-line company, engaged in transporting gas from Texas and Oklahoma fields into Kansas and other states. The stock of each of the distributing companies is owned by the Gas Service Company, and its stock is owned by the Cities Service Company; the common stock of the Cities Service Gas Company is owned by the Empire Gas and Fuel Company, the voting stock of which is owned by the Cities Service Company. Henry L. Doherty, doing business as Henry L. Doherty and Company, owns 35 per cent of the voting stock of the Cities Service Company. The policies of the distributing companies and the pipeline company are subject to control by the Cities Service Company, and Doherty controls its policies. These corporations and he constitute 'affiliated interests' as defined by a Kansas statute effective March 9, 1931." (p. 363.)

The writ asked for in the present action seeks to compel the companies to comply with an order of the corporation commission of the state issued on February 23, 1934, in its docket number 13,127. The contest turns largely upon an interpretation of the provisions of that order.

The reasonableness of the charges for gas made by the Cities

Service Gas Company to the distributing companies has been a matter of controversy between the gas companies and the state regulatory bodies for years. This is also true of the charges made by Henry L. Doherty and Company for purported services rendered. For years it was thought that state regulatory bodies could not inquire into the reasonableness of the charge that was made by a pipeline company to a distributing company for gas at the city gates on account of the interstate character of the pipe-line transportation. This charge constituted the major items of the distributing company's operating expense. The decision of the supreme court of the United States in the case of *Smith v. Illinois Bell Tel. Co.*, 282 U. S. 133, 75 L. Ed. 255, settled that question in favor of the right of the regulatory body, where the reasonableness of the rate or charge between affiliated companies is to be determined, even though the business is interstate. The doctrine of that case was followed in *Western Distrib'g Co. v. Comm'n*, 285 U. S. 119. That was a gas-rate case involving one of the companies which is defendant here. The supreme court held:

"Where a corporation selling natural gas locally procures its supply by agreement in interstate commerce from a pipe-line company with which it is so affiliated that the two are not at arm's length in their dealings, the reasonableness of the interstate price is subject to be inquired into by state authority when applied to by the local company for permission to increase its local rate. (*Smith v. Illinois Bell Telephone Co.*, 282 U. S. 133.)"

The statutory three-judge court denied the injunction, and used the following language:

"Since the Cities Service Company enjoys a monopoly and affords the only reliable source for supplying gas to the distributing companies, the only method of determining the fairness and reasonableness of the charge at the city gate is to determine the reasonableness of the return to the Cities Service Gas Company on their property used and useful in the business. Any charge in excess of that for gas at the city gates, under the contract between two subsidiary corporations who have the same parent or holding corporation, would be unfair and unreasonable." (*Wichita Gas Co. v. Public Service Commission*, 2 F. Supp. 792, 796.)

The legislature of 1931 had also passed "An act relating to the public service commission in relation to holding companies and of transactions as between affiliated interests in public utility companies." This act also gave the commission definite statutory authority over contracts between affiliated public utility companies. Following these authorities, all parties to this action are agreed that

the corporation commission has authority to inquire into the reasonableness of the city-gate charge.

On July 2, 1931, the commission issued an order for an investigation of the reasonableness of the city-gate charge. Since the effect of the various orders issued by the commission are of importance in the determination of this action that order is set out herein. It is as follows:

"Now, on this second day of July, 1931, it appears to the public service commission for the state of Kansas that the reasonableness of all contracts and charges made by holding companies to subsidiary companies of the Cities Service Company (respondents above named) operating within the state of Kansas, should be inquired into for the purpose of determining the reasonableness of such contracts and the reasonableness of the charges made for services and commodities furnished.

"It further appears to the public service commission that the holding companies of said subsidiary companies occupy a special position with particular advantages in relation to the sale of gas and contracts for service and commodities furnished; and that the holding companies, through stock ownership, dominate and control the management of the said subsidiary companies.

"The commission therefore finds that the contracts made and charges for services rendered and commodities furnished to said subsidiary distributing companies by the holding companies and Henry L. Doherty and Company should be inquired into to determine their reasonableness and to find what amount should be allocated in this respect to the operating expense of the subsidiary companies.

"It is therefore by the commission ordered: That an investigation be set for hearing on the 18th day of August, 1931, at 10 o'clock a. m., at the office of the commission in Topeka, Kan., to inquire into the reasonableness of contracts made with, and the services rendered to, the subsidiary companies of the Cities Service Company by their various holding companies.

"It is further by the commission ordered: That each of the above-named respondents appear on the above-mentioned date to give to the commission such information as they may desire on their own behalf, and as may be required by the commission, in behalf of said investigation, and to show cause why such holding-company contracts, or services or commodity charges, should they be found to be unreasonable, should not be disallowed as operating expenses of the distributing companies, and adjustment made in this respect as to charges made to the consumers."

This proceeding thus begun was given docket number 13,127, together with a designation, by letter, of each subsidiary company, including each distributing company. The companies, which are defendants here, were served with notice of this hearing. They insist now that they entered a special appearance. In view of the result reached by this decision this matter becomes of no importance. It

will be noted that the order provides for the investigation into the reasonableness of the city-gate charge *and also to find what amount should be allocated in this respect to the operating expenses of the subsidiary companies*. A hearing pursuant to this order was commenced before the commission on October 16, 1931, and closed on February 16, 1932. During this time the commission heard testimony for twenty-six full days and received and considered 101 exhibits, some of the exhibits containing several thousand pages. There was testimony from about forty witnesses, and the evidence, when finally transcribed, consisted of 2,900 pages of testimony. After a rehearing the commission on August 31, 1932, made two orders. The first one is referred to as the first order and is in part as follows:

"7. The distributing companies, respondents above named, and the Cities Service Gas Company, are mere agents or instrumentalities of the Cities Service Company.

"8. That the contract between Henry L. Doherty and Company and the various distributing companies, respondents above named, under which Henry L. Doherty and Company purports to render various departmental services to the distributing companies, and receives as consideration therefor one and three-fourths per cent of the gross revenues of the distributing companies; an engineering fee of five per cent of the cost of the construction; a fee for services of the securities department and an additional expense and per diem charge is unreasonable, and that the compensation received thereunder is excessive to the extent of the payment of the one and three-fourths per cent of the gross revenues of the distributing companies.

"9. That the contract between the Cities Service Gas Company, a natural-gas pipe-line company, and respondents above named, under which the Cities Service Gas Company sells gas to the distributing companies at the city gate at an average price of 39.5 cents per M. C. F. is unreasonable, and that the payments made thereunder are excessive above the amount of 30 cents per M. C. F. for such main-line border gas.

"10. That 30 cents is a reasonable price to be paid to the Cities Service Gas Company by the respondents for main-line town-border gas, and that any amount paid in excess thereof is unreasonable.

"11. That the costs hereof incurred by the commission herein, amounting to $66,936.08, should be taxed to and paid by the respondents.

"12. That on or after the 1st day of September, 1932, the distributing companies, respondents above named, shall cease to set up on their books as an expense item any payments made to Henry L. Doherty and Company under the contract above mentioned, because of the one and three-fourths per cent charge and also any payment made to Cities Service Gas Company for main-line town-border gas in excess of 30 cents per M. C. F., and should give no consideration to any such payments in fixing a rate for the domestic consumer.

"It is therefore by the commission ordered:

"1. That on and after the 1st day of September, 1932, the distributing com-

panies, respondents above named, shall cease to set up on their books as an expense item any payments made to Henry L. Doherty and Company under the contract above mentioned, because of the one and three-fourths per cent charge and also any payments made to Cities Service Gas Company for main-line town-border gas in excess of 30 cents per M. C. F., and should give no consideration to any such payments in fixing a rate for the domestic consumer.

"2. That on the 17th day of October, 1932, the distributing companies, respondents above named, appear before the public service commission, at 10 o'clock a. m., and show cause to the commission why the reduction in expenses as above set forth should not be passed on to the consumers with such other reductions as may be found reasonable."

The second order, which, on account of what later transpired, does not concern us here, is as follows:

"Now, on this 31st day of August, 1932, the commission having found that 30 cents per M. C. F. is a reasonable price for the respondents above named to pay the Cities Service Gas Company for main-line town-border domestic gas, and that anything in excess thereof is unreasonable, the commission now has before it for consideration the question of determining the manner in which this reduction in expenses should be passed on to the consumer.

"The commission, therefore, finds that effective September 1, 1932, and until a hearing is held and an order issued, that the distributing companies, respondents above named, should charge rates to the consumers as follows:

"All distributing companies paying a gate rate in excess of 30 cents per M. C. F. shall deduct the difference between what the distributing company is now paying at the city gate and 30 cents per M. C. F. and pass on this difference to the consumer.

"It is therefore by the commission ordered: That effective September 1, 1932, and until a hearing is held and an order issued, that the distributing companies, respondents above named, shall charge rates to the consumers as follows:

"All distributing companies paying a gate rate in excess of 30 cents per M. C. F. shall deduct the difference between what the distributing company is now paying at the city gate and 30 cents per M. C. F. and pass on this difference to the consumer."

The distributing companies and the Cities Service Gas Company brought separate suits in equity to enjoin the enforcement of the two orders of August 31, 1932. The several bills alleged that the orders were confiscatory of the plaintiffs' property, impaired the obligations of their contracts, denied to them the equal protection of the laws and unconstitutionally interfered with interstate commerce.

Application was made for temporary injunction. At the hearing thereon the commission confessed that the second order, made on August 31, 1932, was void, and that its enforcement might be per-

manently enjoined. Hence, we are no longer concerned with that order. A temporary injunction was granted against the enforcement of both orders.

Upon the trial of the consolidated cases the record introduced before the commission was received in evidence, supplemented by an agreed abstract of such evidence and by stipulations and other evidence. The court enjoined the enforcement of both orders. It is worthy of note for our purpose that the court found that the Cities Service Company dominated and controlled both the pipe-line company and the distributing companies and that the commission had power to determine the reasonableness of the charges of the holding or affiliated companies. The court refused to disturb the findings of the commission that the 1¾ per cent paid to Henry L. Doherty and Company was unreasonable and refused to enjoin that part of the commission's order. Thus it will be seen that at such an early stage in the litigation the order finding what was a reasonable city-gate charge was regarded as preliminary.

The corporation commission, the successor of the public service commission, appealed to the supreme court of the United States. That court reversed the decree of the district court in so far as it enjoined the first order of the commission.

Some of the language of the opinion is significant. The court said:

"The first order does not purport to establish or prescribe prices to be paid by the distributing companies to the pipe-line company or purport to establish any rate to be charged by appellees to their customers. It merely directs the distributing companies not to include in their operating expense accounts more than 30 cents per thousand cubic feet for gas furnished by the pipe-line company and not to consider any payments in excess of that price in fixing a rate for domestic consumers.

"We need not decide whether these provisions are repugnant to the constitution or whether they are otherwise invalid. The invalidity of such an order is not of itself ground for injunction. Unless necessary to protect rights against injuries otherwise irremediable, injunction should not be granted. (*Terrace v. Thompson*, 263 U. S. 197, 214, 68 L. Ed. 255, 44 S. Ct. 15.) Appellees in substance suggest that, unless now adjudged invalid and enjoined, the findings and directions of the commission in respect of their operating expenses and the fixing of rates will be binding upon them in later proceedings for the prescribing of rates to be charged by them for gas furnished to consumers and in suits involving the validity of such rates. But the commission's proceedings are to be regarded as having been taken to secure information later to be used for the ascertainment of reasonableness of rates. The order is, therefore, legislative in character. The commission's decisions upon the matters cov-

ered by it cannot be *res adjudicata* when challenged in a confiscation case or other suit involving their validity or the validity of any rate depending upon them. (*Prentis v. Atlantic Coast Line R. Co.*, 211 U. S. 210, 227, 53 L. Ed. 150, 159, 29 S. Ct. 67; *Chicago, M. & St. P. R. Co. v. Minnesota*, 134 U. S. 418, 452, *et seq.*, 33 L. Ed. 970, 977, 10 S. Ct. 462, 3 Inters. Com. Rep. 209.) But the decisions of state courts reviewing commission orders making rates are *res adjudicata* and can be so pleaded in suits subsequently brought in federal courts to enjoin their enforcement. (*Detroit & M. R. Co. v. Michigan R. Commission*, 235 U. S. 402, 405, 59 L. Ed. 288, 289, 35 S. Ct. 126; *Napa Valley Electric Co. v. Railroad Commission*, 251 U. S. 366, 373, 64 L. Ed. 310, 313, 40 S. Ct. 174, P. U. R. 1920 C, 849.) The appellees were not obliged preliminarily to institute any action or proceeding in the Kansas court in order to obtain in a federal court relief from an order of the commission on the ground that it is repugnant to the federal constitution. (*Bacon v. Ruttland R. Co.*, 232 U. S. 134, 138, 58 L. Ed. 538, 539, 34 S. Ct. 283; *Missouri v. Chicago, B. & Q. R. Co.*, 241 U. S. 533, 542, 60 L. Ed. 1148, 1155, 36 S. Ct. 715; *Ex Parte Young*, 209 U. S. 123, 166, 52 L. Ed. 714, 732, 28 S. Ct. 441, 13 L. R. A., n. s., 932, 14 Ann. Cas. 764.) And upon the issue of confiscation *vel non* they are entitled to the independent judgment of the courts as to both law and facts. (*Ohio Valley Water Co. v. Ben Avon*, 253 U. S. 287, 289, 64 L. Ed. 908, 914, 40 S. Ct. 527, P. U. R. 1920 E, 814; *Bluefield Waterworks & Improv. Co. v. Public Serv. Commission*, 262 U. S. 679, 689; 67 L. Ed. 1176, 1181, 43 S. Ct. 675; *United R. & E. Co. v. West*, 280 U. S. 234, 251, 74 L. Ed. 390, 411, 50 S. Ct. 123.)

"It results, therefore, that appellees in their complaints failed to state facts sufficient to entitle them to a decree enjoining the appellants from enforcing the first order, for as insisted by appellants in oral argument in this court, the challenged provisions are merely preliminary steps in aid of investigations for the ascertainment of the reasonableness of appellees' rates, and they have no binding force in respect of payments to the pipe-line company or rates to be charged consumers and cannot be *res adjudicata*. The decree, in so far as it enjoins enforcement of the provisions of that order, will be vacated." (*State Corporation Commission v. Wichita Gas Co.*, 78 L. Ed. 362, 366.)

On February 23, 1934, the corporation commission issued an order in docket number 13,127 as follows:

"Whereas, in this matter, on the 31st day of August, 1932, the public service commission of the state of Kansas made an order, a copy of which is hereto attached, made a part hereof and marked 'Exhibit A'; and

"Whereas, an injunction as to a part of said order was granted by the district court of the United States for the district of Kansas, first division, on the 28th day of January, 1933; and

"Whereas, said injunction of said district court, in so far as it relates to said order, has been, by the supreme court of the United States, set aside and reversed and its mandate spread of record on the 23d day of February, 1934;

"Whereas, the public service commission of the state of Kansas has been succeeded by the state corporation commission of the state of Kansas,

"The commission therefore finds:

"(1) That said order is in full force and effect in so far as it directs that the

distributing companies, respondents above named, shall cease to set up on their books as an expense item, any payments made to Henry L. Doherty and Company under the contract mentioned in said order, exhibit A, because of the 1¾ per cent charge, and also any payments made to the Cities Service Gas Company for main-line town-border gas in excess of 30 cents per M. C. F., and should give no consideration to such payments in fixing a rate for domestic consumers;

"(2) That a further investigation should be made into the rates, charges and exactions, rules and regulations of each individual operating unit of each distributing company, respondents above named, for the purpose of determining their reasonableness, and of adjusting the same as may be found to be proper.

"It is therefore by the commission ordered:

"1. That further investigation be made into the rates, charges, and exactions, rules and regulations of each individual operating unit of each distributing company, respondents above named, for the purpose of determining their reasonableness and of adjusting the *same as may be found to be proper.*

"2. That the distributing companies, respondents above named, shall appear before the state corporation commission of the state of Kansas and show cause to the commission, if any they have, why the reductions as set forth in finding one hereof shall not be deducted as an operating expense in determining the reasonableness of the rates, charges and exactions, rules and regulations of each individual operating unit of each distributing company, respondents above named, and that respondents furnish such other information as they may desire on their own behalf and as may be required by the commission in investigating and determining the reasonableness of the rates, charges, and exactions, rules and regulations of each operating unit.

"3. It is further ordered that the respondents above named appear before the commission on the 15th day of March, 1934, at ten o'clock a. m., at the office of the commission, for the purpose of determining which particular respondent will be first heard, and the rates, charges and exactions, rules and regulations of which particular operating unit or city will be first investigated and the time and place of such hearing and investigation."

It will be noted that the order finds that the 30-cent city-gate order and the 1¾ per cent order are in full force and effect, and that *a further investigation should be had of the rates of each operating unit of each distributing company for the purpose of determining their reasonableness and of adjusting them as may be found proper.* It was ordered that such a further investigation be made and that the distributing companies appear and show cause why reductions as found with reference to the 30-cent and 1¾ per cent order should not be made in determining the reasonableness of the rates of the distributing companies. A date was set when all the distributing companies should appear and determine which company would be heard first. It will be noted that this action accords with the action

of the public utilities commission of Ohio, which was approved by the supreme court of the United States in the case of *The Dayton Power and Light Co. v. Pub. Util. Comm. of Ohio* (April 30, 1934), 54 Sup. Ct. Rep. 346, 78 L. Ed. 832. In that case the only element of the consumer's rate that was considered was the city-gate charge for gas furnished by an affiliated company.

On March 12, 1934, instead of complying with the order of the commission the distributing companies secured an injunction in the district court of Shawnee county enjoining the commission from enforcing the order of February 23, 1934. The allegations of this petition were included in the return to the writ in this action and are discussed in this opinion.

When it thus became evident that the distributing companies did not intend to comply, the commission brought this action. It is brought under the provisions of R. S. 66-181 and 66-182. These sections are as follows:

"It shall be the duty of every railroad company and each and every officer, agent and employee of any railroad company, and of each and every person engaged in any capacity in the conduct of the business of a common carrier, to obey all reasonable orders of the public utilities commission made under the authority conferred by this act. In case any railroad company, or any such officer, agent, employee, or person, shall violate or shall refuse or fail to obey any such order lawfully made by said public utilities commission, any person aggrieved thereby may institute and prosecute mandamus proceedings in the supreme court, in the name of the state on the relation of such person, to compel compliance with and obedience to such order; and in any case where in the opinion of the public utilities commission the interest of the public requires it, such commission shall require such proceeding to be brought, and such proceeding shall then be brought by the attorney-general in the name of the state. The practice in such proceedings shall be as in other cases of mandamus, but the court may control the time of trial without regard to the time the issues are joined. Cases instituted under the provisions of this section may have precedence as to the time of hearing over all other classes of cases except criminal cases. . . . In such action the court may direct the railroad company affected thereby to comply with any part of any rule, order or regulation of the commission, and may hold any part of the same unreasonable, and refuse to enforce such part, without affecting the part found to be reasonable and just. Disobedience of any judgment, order or writ of the supreme court in any such proceedings shall be punished as in other cases of contempt. The proceedings in cases of contempt shall be summary in their nature, under such rules as the court shall adopt, and no jury trial shall be required or had therein. . . ."

R. S. 66-182 provides:

"No injunction, interlocutory order or decree suspending or restraining the

enforcement of an order of the public utilities commission shall be granted except on hearing, after not less than five days' notice to the commission. The institution of any action by any railroad company against the public utilities commission to vacate or set aside any order, finding or decision of the public utilities commission shall in no manner interfere with or prejudice the rights of said commission or any other party in interest from availing itself of the remedies provided in the preceding section. Whenever a proceeding brought in the supreme court under the provisions of the preceding section by the attorney for the commission, or the attorney-general upon the direction of the public utilities commission against any railroad company to compel the compliance with any order of said commission, shall be pending at the same time with an action brought in any district court of the state by such railroad company to vacate such order, the supreme court, upon such fact being made to appear, may stay all proceedings in said district court in said cause, so far as relates to the subject matter involved in such proceeding in the supreme court, . . .; and if said proceeding in the supreme court results in a final decision upon the merits, determining the question of the validity of such order, said district court, upon the facts being made to appear, shall render judgment in accordance with such decision of the supreme court."

The question of the jurisdiction of this court to issue the writ prayed for will be dealt with later in this opinion.

The first point urged by the defendants is that the commission had no jurisdiction to issue the order of July 2, 1931. The reason urged is that the commission is only authorized to make rate orders, and that the proceeding under docket number 13,127 is an investigation of the city-gate charge for every city served and not a hearing as to any consumer's rate. The answer to that argument is that an investigation of the reasonableness of the city-gate charge involves matters and elements that are common to the city-gate charge in every distributing company served. In the case of *Dayton Power and Light Co. v. Pub. Util. Comm. of Ohio*, supra, the supreme court of the United States discussed the elements that should be considered in arriving at a reasonable city-gate charge under similar circumstances. They are: First, the value of the gas fields; second, amortization and depletion; third, calculation of reserve for depreciation; fourth, accrued depreciation; fifth, the disallowance of "delay rentals" for unoperated leases; sixth, the rate in controversy viewed in the aspect of a customary charge; seventh, the general administration expenses incurred by the appellant in the conduct of its business. Each one of these elements must be considered by any tribunal that determines what a reasonable charge for gas at a city gate should be. What the commission did in the

proceeding under docket number 13,127 was to consider the above elements as they related to the entire system. In the hearing which the commission now intends to conduct if there are any elements of a reasonable city-gate charge that apply to the charge that should be made at the city gates of Topeka, which do not apply to the charge at the city gates of Wichita, they can be considered in this proceeding when the commission fixes a consumer's rate. We conclude that the only proper manner for the commission to proceed was to examine the broad general questions that are common to all the city-gate charges before attempting to fix a consumer's rate.

The next argument of defendants is that the proceeding under docket number 13,127 was finally closed when the order of July 20, 1932, was made. They base this argument on the use of the following language in the opinion and in the order:

"The above investigation of the reasonableness of the contracts and charges made by holding companies to subsidiary companies of the Cities Service Company doing business in the state of Kansas comes now before the commission for *final* decision."

The order which accompanied the opinion recites:

"Now, on this 20th day of July, 1932, the above-entitled matter comes regularly before the commission for *final* determination." (Italics ours.)

The answer to this argument is that the order concluded with a direction to the defendants to show cause why the reduction in expenses due to the 30-cent city-gate charge order should not be passed on to the consumers. It was at this point that the gas companies brought their bills in equity to enjoin the enforcement of the order. The last part of the order is clearly a notice of a hearing for the purpose of fixing a consumer's rate. It is the consumer's rate, the confiscatory nature of which may be raised in a bill in equity. (See *State Corporation Commission v. Wichita Gas Co.*, 78 L. Ed. 362.) Defendants rely on the following language in the opinion of the three-judge court that enjoined the enforcement of the order of the commission of August 1, 1932:

"Counsel for the commission contend that the first order is not subject to any of the constitutional objections urged by the plaintiffs, namely, that it confiscates their property, interferes with their right to contract, and interferes with interstate commerce, because all that it does is to find that the contracts under inquiry are unreasonable, and the extent of such unreasonableness. They urge that the order does not take any property from the Cities Service Gas Company, that it still may continue to collect the 40-cent gate rate, that it does not take any property from the distributing companies, that they may

still continue to charge their present rates until a valid order is made requiring them to make a decrease in their charges to their consumers, that it does not require the distributing companies to discontinue the contracts nor to discontinue any payments thereunder, and that such contracts remain in full force and effect.

"There are two answers to this contention. The first order, entered August 31, 1932, expressly prohibits the distributing companies from giving consideration to the payments made to Henry L. Doherty and Company and to the Cities Service Gas Company for gas at the city gates in excess of thirty cents per thousand cubic feet 'in fixing a rate for the domestic consumer' on and after September 1, 1932. These are two of the important items which enter into the cost upon which the distributing companies' rates are predicated, and the elimination thereof on September 1, 1932, from the rates charged the domestic consumers would have necessarily affected a substantial reduction in rates. Hence, the order is in substance and effect a rate-reducing order.

"But, if it is only an order adjudging the contracts unreasonable and determining the proper amount which may be set up for expenditures thereunder as proper operating expense in determining rates for local consumers and is only a preliminary step in a rate determination, the order is subject to review. Had the distributing companies failed to appeal from such order or seek a judicial review thereof within thirty days from August 1, 1932, it would have become final on September 1, 1932, and the facts therein found would have become *res adjudicata,* and, in that event, at the hearing under the last paragraph of the second order, the companies could not have defended against an elimination of such items as a part of their operating cost in fixing their rates.

"If the construction of counsel for the commission is correct, the order is plainly an attempt to avoid a judicial review in this court of the matters therein determined, and to deprive the distributing companies of their constitutional rights. This cannot be tolerated." (*Wichita Gas Co. v. Public Service Commission,* 2 F. Supp. 792, 795.)

This language in the opinion leads us to the conclusion that at that stage in the proceedings the commission was making the point that the order of August 31, 1932, was not a final order but a preliminary one. The trouble with defendants' argument is that the supreme court of the United States did not agree with the decision of the three-judge court on this proposition, but adopted the view urged by the commission that the order was merely a preliminary one and that its enforcement could not be enjoined because not final.

The next argument of defendants is that the proceeding under docket number 13,127 died with the former commission and is not a proceeding pending before the present corporation commission. Defendants cite in support of this contention the portion of the statute creating the corporation commission. That section is as follows:

"All pending actions or proceedings brought by or against the public service commission of the state of Kansas, as existing prior to the passage of this act, shall not be affected by this act, but may be prosecuted or defended or proceeded with in the name of the state corporation commission, unless otherwise specifically denied by law."

Defendants argue that because there is no provision in the act transferring matters pending before the old public service commission to the corporation commission, pending proceedings before the old commission were not transferred, but ceased to have any force and effect. Chapter 275 of the Laws of 1933 creates the state corporation commission. It confers all the rights, powers and duties of the public service commission upon the new commission, and it transfers all files, records, documents and property of the public service commission to the corporation commission. These provisions, taken together with the provisions of section 7, which have been quoted, we hold to be broad enough to give the state corporation commission jurisdiction to proceed with all matters pending before the public service commission. To hold otherwise would be to attribute to the legislature an intention to do a great injustice to the parties who had matters pending and undecided at the time of the passage of the act.

Defendants next attack the order of February 23, 1934, on the ground that it did not give them thirty days' notice. They rely on the rule laid down in *State, ex rel., v. Railway Co.*, 108 Kan. 847, 197 Pac. 192. The syllabus of that case is as follows:

"The public utilities commission cannot, by declaring that it retains jurisdiction of a matter in which it makes a complete order fixing railroad freight rates in response to an application pending before it, defeat the necessity of giving the thirty days' notice required by section 8341 of the General Statutes of 1915, in a subsequent proceeding in the same manner to cancel the order first made."

The rule in that case is not in point here. In that case the commission sought to make an order fixing a rate different from what had been theretofore fixed in the same proceeding. The court held that before a final order could be made the court must have a hearing and thirty days' notice. In that case a complete order had been made. In this proceeding the companies all had ample notice when the investigation was instituted. They brought suit and sought to enjoin the enforcement of the order made. We have seen that it was merely preliminary and not *res adjudicata*. Hence, when the decree enjoining the order was finally reversed by the supreme court

and the mandate spread upon the record of the federal district court the commission was right back where it stood when the proceedings were interrupted by the injunction proceedings. It is worthy of note that all that the defendant companies are called on to do on March 15 by the order of February 23 is to appear in the office of the commission and determine which distributing company shall be heard first. It is not to be presumed that the commission would do more than that on that day. In view of that situation we hold that defendant's complaint that they did not have thirty days' notice is not well founded.

Defendants next complain that the commission had no jurisdiction to issue a show-cause order. At first thought, this would appear to be an objection to the form more than to the substance. However, under this heading defendants make the most vigorous argument in their entire brief. They argue that the commission took the position before the supreme court of the United States that the order of August 31, 1932, was only a preliminary order. They insist that in the order of February 23, 1934, the commission takes the position that the matter of the reasonableness of the city-gate charge was settled and fixed.

The commission takes the position that the order fixing what city-gate charge would be considered as reasonable by it in fixing a consumer's rate is not *res adjudicata* because it can be reviewed by the courts in a proper proceeding when the commission finally makes an order fixing a consumer's rate. The position of the commission is that the question of *res adjudicata* concerns an action in court and not before the commission.

We cannot approve either position as a whole.

In the first place, we are all agreed that the order fixing the reasonableness of a city-gate charge was only preliminary. The practical result of holding in accordance with the views of the defendants would mean that no effect could be given to such an order. The weeks of hearings and the painstaking and expensive efforts spent in arriving at a reasonable city-gate charge would be wasted. Apparently what the gas companies argue is that the commission should institute an investigation of the reasonableness of a consumer's rate for a particular distributing company, and should then proceed with the investigation of the city-gate charge as one element of the proposed consumer's rate. Once the consumer's rate was fixed the matter would have to be reviewed by the courts and finally would be

settled. In the meantime the consumer's rate in the other great number of cities served by the remaining nine distributing companies would wait. Obviously, should it be necessary that such a practice be followed, there could be no practical review of rates. This would not be a sufficient reason for approving the practice followed in the proceeding under consideration if it were necessary to proceed in this manner in order to preserve the constitutional right of the companies. We hold, however, that such is not the case.

We have already seen that there are many elements of the city-gate charge that are common to it whether the commission be considering the situation at Wichita or Topeka. No harm can result to the companies from considering all these in a common proceeding.

Laying aside for a moment the thought that the companies sought to enjoin the enforcement of the orders as to the reasonableness of the city-gate charge, the next step would have been to fix a consumer's rate of some distributing system. When that had been done, then, as we have seen, by the decision of the supreme court in *State Corporation Commission v. Wichita Gas Co.,* supra, the gas companies could have resorted to the courts for the purpose of securing a review of the reasonableness of the consumer's rate. How is the position of the companies different here?

For one thing, the economic conditions have changed somewhat. Such a condition is inevitable where there is long, drawn-out rate litigation. We hold that a reasonable interpretation of the order of February 23, 1934, is that pursuant to the order the commission intends to take such things into consideration. The commission insists that such is the case, and the presumption is that the commission will proceed in a lawful manner. At any rate, the companies could raise the question in court in a proper proceeding. It will hardly be contended that a court would approve an order fixing a rate where there had been a marked change in the economic conditions since the commission had the hearing. (See *Railroad and Light Co. v. Court of Industrial Relations,* 113 Kan. 217, 214 Pac. 797.) The same may be said of additions and betterments to plant equipment and to changes in operating costs.

The point that defendants argue most vigorously, however, is that they are entitled to have every element of the consumer's rate fixed by the same commission, and indeed by the same men, as finally fix the consumer's rate. We have seen that this is impossible where the consumer's rates in a number of distributing systems are involved

and litigation extends over several years. How can the constitutional rights of the companies be preserved and at the same time the investigation be proceeded with? Much time and money have been expended thus far in the proceeding before the commission. The companies have shown the commission the value of the properties used and useful in furnishing gas to the distributing companies at the city gates. No constitutional rights of the companies will be infringed upon by permitting the present corporation commission to examine the record that was made before the commission at the previous hearings. Thus, the valuations, tabulations of operating expenses and all other calculations that were available to the commission at the hearings had upon which the preliminary order determining the reasonableness of the city-gate charge was made will be available to the present commission. Once that is fixed, every factor that goes to make it up will be subject to review by the courts. The commission, in considering what will be a reasonable consumer's rate, must exercise its own independent judgment as to the reasonableness of every element in the consumer's rate. For the purpose of this the commission must consider the record that has already been introduced in this proceeding and exercise its own independent judgment upon that record and what evidence is necessary as to changed conditions to bring that record down to date in arriving at what constitutes a reasonable city-gate charge.

Defendants next argue that by its order of February 23, 1934, the commission seeks to change a proceeding that was instituted as an investigation into the reasonableness of contracts into a rate case. The companies cannot complain about this as long as the commission that fixes the consumer's rate considers all the necessary elements and arrives at a consumer's rate based upon its independent judgment thereon.

The companies next argue that the proceedings are unconstitutional because it is an attempt to fix the rates of different distributing companies in the same proceeding. The argument is that the rates of each distributing company must be established independently of all others. As a matter of fact that is what the order of February 23, 1934, seeks to do. It directs the companies to come in on a day fixed and determine which company will be heard first. The city-gate charge is made up in the main of elements that are common to the charge to all the distributing companies, but the elements that are peculiar to the consumer's rate in each distributing

company are to be considered as applying to that company alone. The defendants point out the case of the Girard Gas Company, which has only 308 customers and an annual income of only $2,067. The fact is that the plan followed by the commission is the only way in which there could be any reasonable investigation of the rates of such a company.

The defendants next argue that the valuation of September 1, 1931, is obsolete. We have already held in this opinion it would be the duty of the commission to bring the valuation down to date and to arrive at a valuation from its own judgment. It must be presumed that the commission will act in a lawful manner. The same may be said of the next argument of the defendants that the finding as to the earnings of the company is obsolete.

As remarked at the beginning of this opinion, this action is brought under the provisions of R. S. 66-181 and R. S. 66-182. These statutes have been held to apply where the utility refuses to obey an order of the commission. (See *State, ex rel., v. Telephone Co.,* 102 Kan. 318, 170 Pac. 26.) When the companies resorted to the district court of Shawnee county and enjoined the commission from proceeding with the hearing the commission was justified in instituting this action. When this action is carefully analyzed a simple picture is presented of the utilities refusing to present themselves to the commission and arguing as a reason for their refusal that the commission will do them an injustice if they do come before it. The rule is that the utility must submit itself to the commission, and after the commission has acted resort to the courts and not before. (See *State, ex rel., v. Flannelly,* 96 Kan. 372, 152 Pac. 22; also *Kansas City v. Utilities Commission,* 103 Kan. 473, 176 Pac. 324.)

We therefore conclude that the orders of the commission of July 2, 1931, August 31, 1932, and February 23, 1934, designated as exhibits A, B and C in the alternative writ, were lawful orders. The writ should be granted, not just as prayed for, but qualified somewhat.

Defendants question our right to do this. They take the position that if a return to an alternative writ sets up a sufficient reason for noncompliance with any detail of the alternative writ a demurrer cannot be sustained to it. 18 R. C. L. 359 is cited to sustain this proposition. The language in that text on the question is as follows:

"In other words, a mandamus proceeding cannot be used as a 'dragnet,' but the party seeking relief by that proceeding must specify just what he wants,

. nothing more nor less. In the application of this rule it has been held that where the alternative writ requires several things to be done, if the relator on the return to the writ shows that he is entitled to some, but not all, of the relief demanded, the peremptory writ must be refused." (p. 360.)

In 38 C. J. 932 this rule is discussed, and the further observation is made—

"And the strict rule has been greatly relaxed in some jurisdictions where it is held that the peremptory writ may be in any form consistent with the case made by the complaint and embraced within the issues, and that the peremptory writ may command the performance of only part of the acts referred to in the alternative writ, where the acts are independent of each other."

This statement is in point here because R. S. 66-181 provides, in part, as follows:

"In such action the court may direct the railroad company affected thereby to comply with any part of any rule, order or regulation of the commission, and may hold any part of the same unreasonable, and refuse to enforce such part, without affecting the part found to be reasonable and just."

All this accords with the views heretofore expressed by this court where it has announced decisions that have made mandamus an effective remedy where any public question is involved. (See *State, ex rel., v. Williams*, ante, p. 599, 32 P. 2d 481, and cases there cited.)

It is therefore the order of this court that a peremptory writ issue, directing defendants to appear before the commission in accordance with the order of February 23, 1934, and that the commission proceed to consider the record made heretofore in proceeding number 13,127, together with such other evidence as is presented to it as to changed conditions tending to bring this record up to date, so that a reasonable city-gate charge to each distributing company may be ascertained as an element in a consumer's rate, and to further consider such elements of a consumer's rate as are peculiar to each distributing company, and to thus apply its own judgment to all these elements—that is, the reasonable city-gate charge and the elements peculiar to each distributing company—and to then fix a reasonable consumer's rate for each distributing company. In view of the result reached in this action the injunction proceedings now pending in the district court of Shawnee county, which have been referred to heretofore in this opinion, should be dismissed. It is so ordered.