No. 33,747

THE STATE OF KANSAS, ex rel. PAUL L. AYLWARD, County Attorney of Ellsworth County, *Plaintiff*, v. GUY A. THOMPSON, as Trustee for THE MISSOURI PACIFIC RAILROAD COMPANY, Debtor, *Defendant*.

(80 P. 2d 1070)

Opinion filed July 9, 1938.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Paul L. Aylward,* county attorney, for the plaintiff.

*W. P. Waggener, O. P. May, B. P. Waggener* and *Ralph M. Hope,* all of Atchison, for the defendant.

The opinion of the court was delivered by

HUTCHISON, J.: This is an original proceeding in mandamus brought by the state of Kansas on relation of the county attorney of Ellsworth county to compel the Missouri Pacific Railroad Company to construct a railroad crossing in compliance with an order made by the board of county commissioners of Ellsworth county on April 7, 1937. An answer has been filed by the railroad company, giving various reasons for its refusal to comply with the order of the board of county commissioners and reasons why a writ should not be issued in this case.

Exhibits were attached to the motion of the plaintiff for the writ and to the answer of the defendant. A stipulation has been filed admitting the truth and correctness of the exhibits attached to the motion and the answer, and setting out in detail the facts concerning the proceedings leading up to the issuing of the order for the making of the crossing and the history of an earlier crossing at or near the same place, also agreeing that Guy A. Thompson, as trustee, should be substituted as defendant for the Missouri Pacific Railroad Company. The attorney general has joined the county attorney in the brief urging the right of the plaintiff to a writ of mandamus.

The plaintiff claims to be entitled to a writ because the board of county commissioners has complied with all the preliminary requirements for the making of an order for a railroad crossing. No particular objection seems to be urged by the defendant as to any omission or disregard of any of such requirements before the making of the order, but defendant urges that the order is void for unreasonableness, that mandamus should not compel a violation of law nor be issued where the changed situation makes the necessity of the order doubtful.

The crossing is intended to connect the north and south portions of the county road on the section line between sections 26 and 27 and running through the town of Langley. The crossing is intended to be 20 feet wide from shoulder to shoulder, and 55 feet east of the section line. There was for a long time a crossing connecting the north and south parts of this highway now separated by the

railroad. In June, 1930, this highway crossing was regularly closed for public use at the request of the railroad company, under the provisions of the statute, but it has still continued to be used by pedestrians. The railroad company made the request for the elimination of the crossing for the purpose of making changes in its roadbed there and along its line generally in Kansas, and the company has since raised its track at that place 6½ feet, and the main track is now 3.03 feet higher than the side track 23 feet to the north. The crossing is not at right angles with the railroad, which comes into Langley from the northeast and continues westward, bearing somewhat to the south. It crosses the state highway No. 4 on the north line of section 26 about three eighths of a mile from the crossing in question.

When this crossing was discontinued in 1930 the railroad company gave the county a strip of land 18 feet wide off the south part of its right of way between the crossing in question and the crossing of state highway No. 4, three eighths of a mile to the northeast, and also a similar strip of land off the north part of its right of way from the proposed crossing to the southwest crossing at Third street, 1,196 feet distant. Both strips were prepared as usual for highways at the expense of the railroad company and deeded to the county, the expense being more than $10,000.

The side track is 23 feet north of the main track, and the grain elevator and the stockyards are near the side track. The side track and the general level on both sides of it are nearly four feet lower than the main track. The schoolhouse is in the block immediately south of the railroad and west of the county highway and is 390 feet from the proposed crossing, and approximately 900 feet from the crossing west of it. Seventy percent of the grain brought into Langley comes from the north. The town of Langley is unincorporated, with less than 75 inhabitants, and the population of the township in which it is located is about 325.

The viewers appointed by the board of county commissioners to investigate the convenience and inconvenience to individuals and the public as a result of the opening of the proposed crossing made a report to the board and gave the following reasons in favor of the crossing, which report was approved by the board:

". . . we respectfully report as follows, and for the following reasons, viz.:

"The reason for opening said road is for the public-school convenience. Second, we feel that with the one crossing at the elevator is dangerous on

account of railway cars on the south side of the crossing. In the third place, it gives a much better way of getting stock to the stockyard. We figure that this crossing should not have been closed in the first place; it was closed without the will of the people.

"The present road makes it a half mile farther for the patrons of said school."

Plaintiff cites G. S. 1935, 66-227, which makes it the duty of a railroad company to make and keep in good repair all crossings by public highways, and G. S. 1935, 19-212, gives power and authority to the county board to open such a crossing even though it may have been closed. G. S. 1935, 68-509, 68-102 and 68-114, give authority to county boards to require necessary crossings and to eliminate them and also to reopen them after they have been closed, so there can be no question as to the authority of the board in this line of duty, and while the acts of the county board are generally legislative and administrative rather than judicial, yet some of their acts under certain circumstances are subject to review, and others to supervision by mandamus.

Plaintiff cites the following from the opinion in the case of *Evans v. Edelbrock*, 106 Kan. 233, 187 Pac. 664:

"Whether the relocation was practical and convenient and the new road was of public utility and could be made without unreasonable expense, were questions which called for an exercise of the legislative powers of the board. It has been decided that the vacation, relocation and establishment of roads largely involves the legislative and administrative powers of the board, and that these functions are beyond the jurisdiction of the district court." (p. 235.)

This was said in a case where the trial court dismissed the appeal from the order of the board of county commissioners vacating a road and establishing it on another line. However, shortly before the action for relocation of the road was commenced a separate action of mandamus was commenced to compel the opening of the road, which mandamus action was still pending when the opinion in this case was written, and the fourth paragraph of the syllabus explains the application of the views expressed in the portion of the opinion above quoted. It is as follows:

"The pendency of a proceeding in mandamus against a township trustee to compel the opening of a road does not prevent a board of county commissioners from allowing a petition to vacate the road or from establishing the same on another line."

Except for the fact that the county has taken from the railroad deeds to the two tracts for highway along the railroad right of way

to the crossings on both sides of the proposed crossing, and the fact that the grade of the main track at the proposed crossing has been raised 6½ feet since the crossing was by agreement eliminated in 1930, the situation is the same as if an application was being made for a crossing for the first time. No irregularity is urged in the matter of the elimination, and, of course, under the statutes above cited, no laches apply, and there is nothing to prevent a new application being considered for restoring a crossing after its elimination if the present circumstances and convenience of the public justify it.

A serious difficulty pointed out by the railroad company is in the matter of compliance with the provisions of G. S. 1935, 66-227, above cited, which requires that such railroad crossings "shall be on the same grade as the track for thirty feet on each side of the center of said track, unless the board of county commissioners shall find the same to be unnecessary, and the approaches thereto shall not exceed a six-percent grade." The stipulation shows the grade of the approach on the north from the side track, 23 feet away, would be 19 percent. To comply with the specifications of the statute would require the moving of the side track at least 7 feet to the north and raising its grade quite a little to reduce the grade of the approach from 19 percent to 6 percent. To raise the grade of the side track would seriously affect its usefulness at the grain elevator and the stockyards and perhaps in other particulars.

The first reason given by the viewers for the restoring of the crossing was for the public-school convenience. The other two reasons given are of less importance, but it is said in the plaintiff's brief that some pupils have to travel as much as half a mile farther than they would if the crossing were restored. If they ride, a half mile additional travel would not be a very great inconvenience, and if they walk, the abandoned crossing is said to be still used by pedestrians. Another reason given by the viewers was that the proposed crossing would give a much better way of getting stock to the stockyard. The stipulation shows that by oral agreement the crossing might still be used for livestock and pedestrians, but that there was difficulty in driving cattle across it because it was not planked and the drop to the north of the track was sharp and abrupt.

Defendant cites *State, ex rel., v. St. Louis-S. F. Rly. Co.*, 124 Kan. 433, 260 Pac. 980, as being similar to the case at bar in many particulars. In that case the distance between the two tracks was

36 feet and the grade was raised 9 feet. The defendant constructed an underground pass at its own expense a mile away from the closed crossing and a grade crossing at another place a mile away in the other direction, and constructed new highways to each of these crossings. In that case the action to restore the crossing was commenced three years after the improvements had been made, and although the elimination of the original crossing had been made without regard to the requirements of the statute, yet in a mandamus action to compel the railroad to restore the crossing, it was held:

"Under the circumstances stated in syllabus 1, where the use of the public road was relatively negligible and the need of the railway company to double its tracks and raise the grade of its new track was urgent and the elimination of the grade crossing was a virtual necessity, and where adequate provision was made for other crossings at not inconvenient distances, and where permission to close the grade crossing could have been procured by the proper legal procedure, a restoration of the crossing will not be compelled by mandamus when its practical effect would be the complete demolition of the rail- way company's double track, the disruption of the present railway service, and the consequent disaccommodation of the public served by defendant and its lessee." (Syl. ¶ 2.)

The inconvenience of individuals and the public is certainly no greater in the case at bar than in the Frisco case, and in the case at bar the elimination was made as provided by statute, and the duty is imposed by statute upon the board of county commissioners to eliminate grade crossings as far as practicable by paralleling such railroads and by such other means as may be necessary to properly safeguard the traveling public.

We think with these two parallel highways along the railroad right of way to the crossings on each side of the proposed crossing that the inconvenience is not sufficient to justify the issuance of a writ by this court compelling the crossing on this county road to be restored.

As to mandamus being a proper proceeding to determine the rights of the parties in a matter of this kind, neither party in this case is in a very good position to raise the question because the plaintiff has invoked the proceeding on the suggestion of the defendant by letter. The ruling in the Frisco case, *supra*, would be sufficient to settle that question, but the following three rulings will supplement the decision in that case:

"Where, after proceedings have been commenced to improve a street, changed conditions, over which the officers have no control, make the public utility and necessity of the improvement doubtful, this court will, in the ex-

ercise of its discretion, refuse to issue a writ compelling the construction of the proposed improvement." (*State, ex rel., v. Ellis,* 135 Kan. 702, syl., 11 P. 2d 708.)

"The writ of mandamus is a discretionary writ; it does not issue as a matter of right, but only in a clear case." (*Board of Education v. Powers,* 142 Kan. 664, syl. ¶ 1, 51 P. 2d 420.)

"Rule followed that a writ of mandamus is not always an absolute right, but is to be given or withheld in the exercise of a sound judicial discretion as the facts and circumstances may warrant." (*State, ex rel., v. McCombs,* 125 Kan. 92, syl. ¶ 6, 262 Pac. 579.)

The writ is denied.