[Civil No. 3991.   Filed November 7, 1938.]

[83 Pac. (2d) 1006.]

A. S. WENTZ, JULIA WENTZ, Otherwise Known as J. C. WENTZ, and EARL M. WENTZ, Appellants, v. PACIFIC STATES SAVINGS AND LOAN COMPANY, a Corporation, Appellee.

Mr. George O. Hilzinger, for Appellants.

Mr. Clifford R. McFall and Mr. John L. Mace, of Los Angeles, California, for Appellee.

LOCKWOOD, J.—Pacific States Savings and Loan Company, a corporation, hereinafter called plaintiff, brought suit against A. S. Wentz, Julia Wentz, his wife, and Earl M. Wentz, hereinafter called defendants, and several other parties whom we need not refer to in this opinion, to foreclose a mortgage on eighty acres of real estate in Pima county which mortgage was given to secure a promissory note executed by Mathew McArthur. The defendants answered and then cross-complained, seeking the recovery from plaintiff of a certain sum of money which they alleged had been paid to it on account of the note above referred to, under a mistake of both fact and law. The case was tried to the court, sitting without a jury, and judgment ren-

dered in favor of plaintiff for the foreclosure of the mortgage, whereupon this appeal was taken.

There are numerous assignments of error, but we think they raise but one serious question of law for our consideration, and we shall discuss them from that standpoint.

The facts necessary for a consideration of the case, taking the evidence as strongly in support of the finding of the trial court as it may reasonably be construed, as under our oft-repeated rule we must consider it, may be stated as follows: In the year 1919 one Edwin R. Post conceived the idea that a large amount of desert land near Tucson, although it was practically worthless in its natural state, might be made of great value by means of irrigation. In pursuance of this idea, he organized a corporation called the Valley Farms Water Company, which was to supply the water, and then sold much of the land to prospective farmers on long time contracts of purchase and sale. Among these purchasers was Mathew McArthur, who bought the eighty acres covered by the mortgage involved herein. The contract originally was for the installment payments to be made by McArthur, but it provided, among other things, that at the option of Post he might deed the premises to McArthur, and the latter would then give him notes for the unpaid remainder of the purchase price, secured by a mortgage on the land. After a short time, it became evident that the irrigation system established by the water company was insufficient to supply the lands which had been sold to McArthur and to many other parties, without further financial assistance, and application was made to the Fidelity Savings and Loan Association, of Los Angeles, California, for a loan. After considerable discussion and investigation, the association agreed to loan $264,000, to be used in the improvement of the irrigation plant, but demanded that it be given

not only a mortgage upon the water and irrigation system, but collateral security in the form of first mortgages on four thousand acres of the cultivated land of the project, which had been contracted to various purchasers, such as McArthur. This was agreed, and in pursuance of such agreement, Post went to McArthur and informed the latter that he desired to take advantage of his option under the contract of purchase and sale by giving McArthur a deed for the land, and taking notes and mortgages back for the remainder of the unpaid purchase price. This McArthur agreed to without objection. There was still some $7,000 due on the purchase price of the land, and two notes were given by McArthur to cover it. The first, being the one which the mortgage in the present action secured, was, by agreement between Post and the association and with the knowledge of McArthur, made directly to the association, but it was known and understood by all of the parties that Post was the equitable owner thereof, and that the interest of the association was merely that of a holder of collateral security for its $264,000 loan. The remainder of the purchase price, some $2,000, was evidenced by a second note made directly to Post and secured by a second mortgage on the McArthur land. This note and mortgage we need not consider further as they are not involved in the present action. At this time, therefore, Post was the equitable owner of the note and mortgage involved herein, subject to the lien of the association for collateral security. 49 C. J., pp. 922, 923. If the $264,000 note was not paid, the association had the right to sue on the note and mortgage and apply the proceeds to the payment of its loan. If, on the other hand, such loan was paid or satisfied in any manner, Post was entitled to a return of the note and mortgage, with all the rights thereunder as mortgagee. 49 C. J., p. 971. Thereafter Post and the Valley Farms Company were

unable to meet their obligations, and a receiver was appointed, who took possession of all their assets, and thereafter all of these assets, which included Post's interest in the note and mortgage herein, were transferred to the Pima Farms Company, a corporation organized under the laws of Arizona for the purpose of taking them over. The Pima Farms Company operated the project for some time, but eventually was unable to continue and went into bankruptcy, and during such bankruptcy its entire assets were purchased at a bankruptcy sale by the association, which paid for them by a cancellation of the $264,000 loan above referred to, together with the cancellation of other loans which it made from time to time. Thereafter the plaintiff herein became the purchaser of the note and mortgage in question from the association, and this suit was brought.

The first question for our consideration is whether or not the court improperly admitted in evidence the various depositions and documents which were necessary to establish the facts above set forth in regard to the circumstances under which the note and mortgage were given. The note, so far as material to the matter we are considering—the remainder simply being details as to the payments, attorney fee and other provisions frequently found in ordinary promissory notes—reads as follows:

"$5280.00                     3–F                     6889

"Los Angeles, Cal., December 16, 1919.
"For value received, I promise to pay to Fidelity Savings and Loan Association, a corporation, at Los Angeles, California, or order . . . "

The mortgage says it is given as security for the above note, and is in the ordinary form of mortgages given for such purpose. Nothing was said in either note or mortgage about any interest Post had therein

or that they were for the amount still due on the purchase price under the contract of purchase and sale.

It was urged most strenuously by defendant at the trial of the case that on its face the payee of both the note and mortgage was the association, and that there was nothing contained therein to indicate that Post had any legal or equitable interest therein, or that the note was given as payment of part of the purchase price of the land, or that it was not merely accommodation paper given as collateral security for the $264,000 loan, in which case a satisfaction of that loan cancelled the security also, and that any attempt to show such matters by extraneous evidence would violate the parol evidence rule.

It was the position of plaintiff that where an instrument merely states its consideration as "for value received," or in similar language, it is always permissible to show the true consideration by parol evidence, and that such evidence in this case shows clearly the note and mortgage were, in effect, given for the purchase price of the land and so not discharged by a satisfaction of the debt for which they had been assigned as collateral security.

The question has been before the courts of this and other states many times, and the rule in this jurisdiction is definitely established that the true consideration of an instrument, when it does not specifically appear on the face of the instrument, may be shown by parol. *Cashion* v. *Bank of Arizona,* 30 Ariz. 172, 245 Pac. 360.

We think the trial court did not err in admitting evidence tending to show that the true consideration for the note was a portion of the purchase price of the land which was due from McArthur to Post. The evidence admitted establishes without contradiction that this is the fact. If the note was only accommodation paper, a discharge of the principal

514

debtor of course discharged it, and *a posteriori* the mortgage. If it was a purchase money note assigned as collateral security, a discharge of the principal debt restored the note and mortgage unimpaired to the true owner.

Since the trial court found, on ample evidence, that it was a purchase money note, Post was certainly the equitable owner and payee of the note and mortgage, subject only to the lien of the association thereon for collateral security for the $264,000 loan, and his interest therein passed to his assignees. The satisfaction of the loan, therefore, in no manner released the obligation of the note and mortgage. All that it did was to discharge the lien and release the collateral security to the true owner, who was, of course, the successor in interest of Post.

This disposes of all of the issues of importance raised by the assignments of error.

Judgment affirmed.

McALISTER, C. J., and ROSS, J., concur.