420 P.2d 286

STATE of Arizona ex rel., Justin HERMAN, Director, Arizona Highway Department, Appellant and Cross-Appellee,

v.

TUCSON TITLE INSURANCE COMPANY, an Arizona corporation, Robert Stubbs and Mary Ann Stubbs, his wife, A. T. Clark, a widower, and the Unknown Heirs of Stella G. Clark, Deceased, Appellees and Cross-Appellants.

No. 8595.

Supreme Court of Arizona.

In Banc.

Nov. 17, 1966.

Darrell F. Smith, Atty. Gen., Phoenix, Robert S. Tullar, Sp. Asst. Atty. Gen., Tucson, for appellant and cross-appellee.

Dunseath, Stubbs & Burch, Tucson, Dushoff, Sacks & Corcoran, Phoenix, for appellees and cross-appellants.

American Trial Lawyers Ass'n., amicus curiae.

LOCKWOOD, Justice.

This is an eminent domain proceeding involving the value of two parcels of unimproved real estate located in the Southwestern area of Tucson, Arizona, at 29th Street and Freeway. On June 8, 1950, the property owner, A. T. Clark, who at that time owned all of the surrounding property now in question, deeded a portion of such property to the state for the proposed freeway. Subsequently in July of 1961 the state filed a condemnation complaint to condemn additional land bordering the property previously deeded to the state by A. T. Clark. At the time of this condemnation, legal title to the larger parcel was in Tucson Title Insurance Company (holding in trust for beneficiaries

Stubbs and Appleton) and title to the smaller parcel was still in A. T. Clark.

The uncontroverted facts are as follows: The Arizona Highway Commission adopted a resolution on November 5, 1948, establishing a state highway known as the Tucson Control Access Highway which we will refer to as the Freeway. A map attached to the resolution indicated that an interchange would be constructed at the intersection of 29th Street and the Freeway, with "on" and "off" ramps, and the main roadway would go under the intersection in question.

In 1950, Clark was approached by the Assistant Chief Right of Way Agent for the state who sought to acquire a portion of the Clark property for the construction of the Freeway. The State Agent showed Clark the map attached to the 1948 resolution and as related by Clark, stated:

> " * * * that the State of Arizona would build an interchange at 29th Street (or Silver Lake Road) and the Tucson Freeway so that my remaining property would have access to the Freeway as indicated on the map which he showed me. I would never have settled with the State and deeded them the property * * * had it not been for this promise that an interchange would be built. The primary consideration which I received from the State of Arizona for the property deeded to them * * * was the promise, agreement and understanding that an interchange would be built at 29th (or Silver Lake Road) and the Freeway."

Clark as a result of such promise on June 8, 1950 conveyed certain property to the state. The Highway Department subsequently changed its plans and eliminated the interchange at 29th Street and the Freeway, and the Freeway was elevated to go over the intersection, though the re-maining construction proceeded in accordance with the 1948 resolution.

The state filed a condemnation complaint on July 21, 1961 to condemn a portion of defendants' parcels. The defendants answered claiming the deed of August 1950, which stated only nominal consideration ($10.00 and other valuable consideration) should be reformed to reflect the true consideration and asked that resulting damages be assessed for the state's failure to construct such interchange.

On August 30, 1963, defendants filed a motion for partial summary judgment requesting the Court to establish that the "before" situation [1] for the purposes of establishing damages was that as shown on the map attached to the Highway Resolution of 1948 which was filed in the Pima County Recorder's Office. The state did not contradict defendants' motion with attached affidavits and judgment was granted for defendants.

The experts at the trial based their opinion of the damages incurred by the defendants on the assumption that an interchange existed before the taking by the state and that in the "after" situation it had been eliminated.

The trial court awarded partial summary judgment for the property owners stating that the state "should not be permitted to retain the property deeded to it on June 8, 1950, without complying with the promises established by affidavit to have been made by this right of way agent even if the right of way agent had no authority to make such promises." Upon trial before a jury, the the latter returned a verdict of $2,700 in favor of Clark and $151,000 in favor of the Tucson Title Insurance Company.

The trial court ordered a remittitur of $40,000 or a new trial as to property owner Tucson Title Insurance Company,

1. Damages to a remaining parcel of land are assessed as the difference between the value immediately *before* the date the summons for condemnation is filed, and the market value immediately after severance from the remaining portion. Suffield v. State ex rel. Morrison, 92 Ariz. 152, 375 P.2d 263 (1962); See also § 12–1123, A.R.S.

which the latter accepted, and an amended judgment was thereafter entered.

The state subsequently filed an appeal seeking a review of the trial court's order granting partial summary judgment. The property owner, Tucson Title Insurance Company filed a cross-appeal, claiming inter alia, that it can appeal the ordering of a remittitur or new trial. The state filed before this Court a motion to dismiss such cross-appeal which we denied on February 17, 1965.

The fundamental issue presented by the state on appeal was whether the trial court erred on granting partial summary judgment for the property owners. Privity and other procedural issues have not been raised on appeal.

■ The state argued that the parol evidence rule barred the introduction of parol evidence to reform the deed to reflect the true consideration of the parties. However, on oral argument, the state correctly conceded that the parol evidence rule would not prevent an explanation of the true consideration. See, Wentz v. Pacific States Savings & Loan Co., 52 Ariz. 508, 83 P.2d 1006 (1938); Cashion v. Bank of Arizona, 30 Ariz. 172, 245 P. 360 (1926).

■ The motion for partial summary judgment was supported by affidavits which showed that the primary consideration was the agreement to construct an interchange at 29th Street and the Freeway. These affidavits were uncontradicted and thus the trial court properly granted summary judgment to the property owners. If the state had wished to controvert the authority of one of its agents it should have submitted opposing affidavits to the motion for summary judgment. A party may not sit idly by on presentation of a motion for summary judgment and fail to urge his defense to such motion when this motion shows that the moving party is entitled to a judgment as a matter of law. Greater Arizona Savings & Loan Ass'n v. Tang, 97 Ariz. 325, 400 P.2d 121 (1965); Wakeham v. Omega Construction Co., 96

Ariz. 336, 395 P.2d 613 (1964); Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187 (1963).

The state places great emphasis on State ex rel. Sullivan v. Carrow, 57 Ariz. 434, 114 P.2d 896 (1941) in which we stated:

"So far as the right to change the location is concerned, we think there can be no question that when the commission, acting in a reasonable exercise of the discretion conferred upon it, determines that it is in the best interests of the public that the route of a highway be changed, it may do so, notwithstanding that the effect of such change is to seriously damage or destroy the value of property along the old line. The right to use such discretion cannot be surrendered by any state officers, and no promise or agreement by any of them can create a vested right in the holder of adjoining property that the main route shall continue to exist as promised."

However in Carrow the assurances and promises given from the Highway Department to the property owner were unsupported by any consideration and thus no contractual rights were created. Carrow only stands for the proposition that promissory estoppel as a substitute for consideration is not binding on the state.

■ While it is true that the Highway Department has the right and power to abandon or change any part of the state highway system, Rowland v. McBride, 35 Ariz. 511, 281 P. 207 (1929) the state must respond in damages if it acquires property in consideration of an agreement to construct an interchange and thereafter fails to construct such interchange. State v. McDonald, 88 Ariz. 1, 352 P.2d 343 (1960); Williams v. North Carolina State Highway Commission, 252 N.C. 772, 114 S.E.2d 782 (1960).

As we have found that parol evidence was admissible to show the true consideration and the state cannot now claim lack of authority of one of its agents, the trial

judge properly granted the motion for partial summary judgment.

■ Defendant, Tucson Title Insurance Company on cross-appeal contends that it may cross-appeal from the order of the trial court pertaining to the alleged excessiveness of the verdict. Basing their argument on two grounds the Title Company argues that this Court correctly denied plaintiff's motion to dismiss the cross-appeal. The first ground is that Rule 58 (b) (2), Rules of Civil Procedure, 16 A. R.S., provides that, upon an appeal from a remittitur the original amount in controversy is reinstated. The rule in question reads as follows:

> "The remittitur shall not affect the right of the opposite party to appeal from the judgment, and *for that purpose* the amount of the original judgment shall be considered the amount in controversy."

It is evident that this provision referred to the jurisdictional amount required for appeal at the time of enactment in September of 1901. See A.R.S. § 1450 (1901). The Supreme Court at that time had appellate jurisdiction only if the matter in dispute exceeded $200.00. A.R.S. § 593 (1887). Thus it is obvious that this section was enacted to remedy the situation in which a plaintiff could remit a portion of a judgment and thereby oust the Supreme Court of jurisdiction. See, Phoenix Wholesale Meat Co. v. Moss, 7 Ariz. 274, 64 P. 443 (1901).

■ With regard to defendants' second argument, the defendants acknowledge that prior Arizona cases [Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 120 P.2d 417 (1941); Matson v. Bradbury, 40 Ariz. 140, 10 P.2d 376 (1932)] have held a party who was awarded damages and accepted a remittitur in accordance with the trial court's order was estopped to attack the remittitur on cross-appeal. Moreover defendants acknowledge that in the vast preponderance of jurisdictions the holdings are in accordance with the prior Arizona cases. However defendants urge this

Court to adopt the reasoning of a Wisconsin Supreme Court case, Plesko v. City of Milwaukee, 19 Wis.2d 210, 120 N.W.2d 130 (1963) which discussed the rationale behind the remittitur. The Wisconsin court reasoned that, as the purpose of remittitur is to terminate expeditiously a judicial proceeding, a consent to a remittitur is by its very nature conditional on the fact that the defendant does not appeal. Though a remittitur may have as one objective the obviating of a new trial, it does not necessarily prevent the defendant from taking an appeal. We decline to depart from the well-established rule in Arizona.

Judgment affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and McFARLAND, JJ., concur.